JOHN F. CAHILL, Respondent, *v.* JOSEPH F. HOGAN, as Mayor of the City of Troy, et al., Appellants.

1. STATUTES — AMENDMENTS TO GENERAL LAW RELATING TO CITIES. A special act or amendment changing the general law applicable to the government of cities must comply strictly with constitutional requirements.

2. CONSTITUTIONAL LAW — LOCAL BILLS. Chapter 629 of the Laws of 1904, all of the provisions of which relate to the city of Troy and were intended to amend its charter in several respects, and which, therefore, is a local bill, does not sufficiently express in its title a purpose to change the personnel of the municipal improvements commission by adding members thereto by a title "An act  * * * to create a municipal improvements commission and to define its powers and duties and to enlarge the powers and duties of said commission," and for that reason is violative of section 16 of article 3 of the Constitution providing that a local bill shall not embrace more than one subject and that shall be expressed in its title.

*Cahill* v. *Hogan,* 99 App. Div. 619, affirmed.

(Argued January 10, 1905; decided January 24, 1905.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 28, 1904, which affirmed an order of Special Term restraining the defendants from acting as members of the municipal improvements commission of the city of Troy under the provisions of chapter 629 of the Laws of 1904, and also restraining the issuance of bonds thereunder.

The following questions were certified:

"*First.* Do the provisions of Chapter 629 of the Laws of 1904 of the State of New York (a local bill applicable to the City of Troy only), whereby the Mayor and Corporation Counsel of the City of Troy were made members of the Municipal Improvements Commission of said city violate the provisions of Article 3, Section 16 of the Constitution of the State of New York?

"*Second.* Do the provisions of Chapter 629 of the Laws of 1904 of the State of New York authorizing the borrowing of moneys and the issuing, signing, countersigning and selling of bonds therefor, violate the provisions of Article 8, Section 10

of the Constitution of the State of New York, in that they allow the City of Troy to become indebted to an amount which, including existing indebtedness, exceeds ten per centum of the assessed valuation of the real estate of said city subject to taxation as it appeared by the last assessment rolls of said city on the last assessment for state and county taxes preceding the passage of said act, the amount of such existing indebtedness being $3,084,316.03, the authorized but unissued bonds being $181,000, under Chapter 576 of the Laws of 1893, as amended by Chapter 370 of the Laws of 1900, and $50,000 under Chapter 315 of the Laws of 1902, making a total of authorized but unissued bonds of $231,000, and making a grand total of existing indebtedness and authorized but unissued bonds of $3,315,316.03, and said assessed valuation of real estate being $50,989,946.00 ?

" *Third.* Does Chapter 629 of the Laws of 1904 of the State of New York, in any of its provisions, violate the provisions of Article 3, Section 17 of the Constitution of the State of New York, by referring to and making applicable parts of existing laws without inserting them in said act ?

" *Fourth.* Does Chapter 629 of the Laws of 1904 of the State of New York violate the provisions of Article 8, Section 10 of the Constitution of the State of New York in that it permits the issue of bonds for providing a water supply having a term in excess of twenty years ?

" *Fifth.* Does Chapter 629 of the Laws of 1904 of the State of New York violate the provisions of Article 8, Section 10 of the Constitution of the State of New York in that it makes no provision for a sinking fund to meet the bonds that it assumes to authorize ? "

The facts, so far as material, are stated in the opinion.

*John T. Norton* and *George C. Lecomte* for appellants. The first question certified to this court should be answered in the negative. (*People ex rel.* v. *Whitlock,* 92 N. Y. 191; *People ex rel.* v. *Angel,* 109 N. Y. 567; *Sweet* v. *City of Syracuse,* 129 N. Y. 316; *Sage* v. *City of Brooklyn,* 89

N. Y. 189; *People ex rel.* v. *Supervisors*, 147 N. Y. 1; *People ex rel.* v. *City of Rochester*, 50 N. Y. 525; *Kittinger* v. *B. T. Co.*, 160 N. Y. 377; *People ex rel. Nechamcus* v. *Warden*, 144 N. Y. 529; *Matter of McPherson*, 104 N. Y. 306; *Matter of N. Y. & L. I. Bridge Co.*, 148 N. Y. 540.) A title which states that the legislation is an act to amend an act, incorporating the title of the act amended, is free from criticism under this clause of the Constitution. (*People ex rel.* v. *Brinkerhoff*, 68 N. Y. 259; *Ensign* v. *Barse*, 107 N. Y. 329; *People ex rel.* v. *Whitlock*, 92 N. Y. 191; *People ex rel.* v. *Crissey*, 91 N. Y. 616; *D. M. L. Co.* v. *Cook*, 3 App. Div. 164.)

*Edgar L. Fursman* and *James C. Fursman* for respondent. The act in question embraces more than one subject and thereby violates section 16 of article 3 of the State Constitution. (*People* v. *Supervisors*, 43 N. Y. 10.) The act in question violates section 16 of article 3 of the Constitution in changing the personnel of the commission as that body was created by and existed under chapter 389 of the Laws of 1903 by adding thereto the mayor and corporation counsel of the city, there being no hint of this in the title. (*People* v. *Bd. of Suprs.*, 43 N. Y. 15; *People* v. *Hills*, 35 N. Y. 453; *People ex rel.* v. *Howe*, 177 N. Y. 499; *Matter of City of Rochester*, 77 App. Div. 32; *Astor* v. *A. R. R. Co.*, 113 N. Y. 109.)

O'BRIEN, J. This is a taxpayer's action to restrain the mayor of the city of Troy and certain of its other executive officers from carrying into effect and executing an act of the legislature purporting to amend the charter of that city, being chapter 629 of the Laws of 1904, which became a law on the ninth day of May of that year. The appeal is from an order of the Appellate Division which affirmed an order of the Special Term granting a preliminary injunction restraining the defendants during the pendency of the action. The learned court below has certified to us five distinct questions or propositions that are supposed to be involved in the general question concerning the validity of the statute referred to.

We do not think it is necessary to answer all these questions categorically, since if this statute offends against any one of the provisions of the Constitution referred to in the certificate, it is not very material to show that it also offends against others, or all of them. Moreover, all the questions certified cannot be discussed in their bearing upon the statute without extending the scope of an opinion beyond all reasonable limits, and since we are not aided by an expression of opinion from the court below concerning the various questions certified to us, it is, we think, the wiser course to confine ourselves to one, or at most two, of the questions with respect to the validity of the law ; which is the general question presented by the appeal.

It has been found by experience that one of the great evils involved in the government of cities consists in the constant changes in their charters by special acts originating, not in the legislature itself, but emanating from some interest in the locality. When the legislature, some years ago, after much investigation, labor and expense, enacted a general law containing a complete and uniform charter for cities of the second class, it was supposed and hoped that this evil would disappear. But these hopes have not been realized, since the resort to special legislation seems to be as common and frequent as ever. Of course, none of the powers of the legislature over the charters of cities have been abridged by the enactment of the general law referred to, but certainly the necessity for such constant changes in a general law enacted with so much care and after such full consideration may well be doubted.

The statute in question, purporting to amend the charter of the city of Troy, contains apparently twenty-four sections, and deals at length with some of the most important affairs of the city. Whether all of the really necessary purposes of this special law could be attained just as well under the general law prescribing a uniform charter for such cities it is not now necessary to inquire ; but we think it is a safe and reasonable rule in the present state of the law applicable to the government of cities to hold that when it is proposed to change

the general law by some special act or amendment the promoters of such change should see to it that constitutional requirements are strictly observed. In this case we think they were not. There are at least two restrictions upon legislative action to be found in the Constitution which were ignored in the enactment of the amendment of the charter which are attacked by the allegations of the complaint.

We think that the statute in question violates section sixteen of article three of the Constitution, which provides that "No private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." This provision of the Constitution plainly requires, not only that such a bill shall be confined to a single subject, but that such subject shall be expressed in the title. The statute now under consideration is plainly what the Constitution designates as a local bill, since all of its provisions relate to the city of Troy. The title of the act is as follows : "An act to amend chapter three hundred and eighty-nine of the laws of nineteen hundred and three, entitled ' An act in relation to the city of Troy, the government of said city, and to create a municipal improvements commission, and to define its powers and duties' and to enlarge the powers and duties of said commission and to provide for additions and improvements to Prospect park and to the water works of the city of Troy under the supervision of said commission and to authorize the issuing of bonds for such additions and improvements and to amend section twenty-four of chapter five hundred and seventy-six of the laws of eighteen hundred and ninety-three, entitled 'An act relative to the water works department of the city of Troy and to provide for an increased supply of water in the said city,' as amended by chapter three hundred and seventy of the laws of nineteen hundred, relative to the issue of bonds for the extension of the water works and an increased supply of water for the city of Troy." It will be seen from the terms of the title to this bill that it was proposed to amend certain existing statutes in regard to the city of Troy. It may be that if the title simply stated

that the purpose was to amend those statutes it would be free from the constitutional objection now directed against it. But the draftsman went still further and attempted to specify in what particulars existing statutes were to be amended, and if these particulars render the bill defective or misleading that brings the enactment within the condemnation of the constitution. / On reading the various provisions of the statute it is quite plain that one of the principal purposes that the promoters of the bill had in view was to change the personnel of the municipal improvements commission by adding to its membership the mayor and corporation counsel. Under the charter provisions as they existed prior to the passage of this bill that commission was composed of the comptroller, the president of the common council and the commissioner of public works. The title of the act in question does indicate a purpose to change and enlarge the powers of the commission, but there is no hint to be found in it that would lead any one to believe that the personnel of the commission was to be changed. Therefore, one of the most important things embraced in the amendment was virtually concealed, so far as the title of the bill was concerned. No one upon reading the title would be apprised of the purpose to change the personnel of one of the most important commissions connected with the city government. That commission had very extensive and important powers and duties under the existing charter, and we think that the provisions of the Constitution fairly applied required the promoters of the change to give at least some hint in the title of the bill of a proposed change of the personnel by enlarging the membership of the commission. A recent decision of this court is, we think, a conclusive authority in support of this view. (*People ex rel. Corscadden* v. *Howe,* 177 N. Y. 499.)

The learned judge who granted the injunction at the Special Term was of the opinion that the statute also was in conflict with section ten of article eight of the Constitution; and in this view we think that his decision was correct upon his view of the facts. That provision of the Constitution is very much involved

in the language employed. It enacts, among various other things, that no city shall be allowed to become indebted for any purpose or in any manner to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of the real estate of such city subject to taxation, as it appeared by the assessment rolls of the city on the last assessment for state taxes prior to the incurring of such indebtedness; and that all indebtedness in excess of such limitation, except such as existed when the restriction went into effect, should be absolutely void, except as therein otherwise provided. The bill in question provided for the increase of the indebtedness of the city of Troy by the issue of new bonds in a large amount. The Special Term was of the opinion that the increase amounted to at least two millions of dollars, while it is asserted now by the learned counsel for the defendants that the increase of the debt would be less than one million of dollars. It is thus apparent that, as to the facts, there is a conflict of views between the parties with respect to this question. We are not entirely satisfied that the limit prescribed by the Constitution would be exceeded by the provision of the statute, but that question involves calculations as to the present debt and as to the amount of the additional debt authorized by this statute. In some aspects it is a question of fact, and we think it is not now necessary to deal with it or to review the accuracy of the calculations and figures found by the learned judge at Special Term. While there is a dispute between the parties as to whether the ten per centum limitation applies, there is no dispute with respect to another provision of this article of the Constitution, which is that it shall not be construed to prevent the issue of bonds to provide for a water supply; but the term of the bonds issued therefor shall not exceed twenty years, and a sinking fund shall be created on the issuing of such bonds for their redemption by raising annually a sum which will produce an amount equal to the sum of the principal and interest of the bonds at their maturity. The statute in question provides for the issuing of bonds to extend the water sup-

ply of the city, to the amount of $1,700,000, payable at such times as the authorities might direct, not less than ten nor more than sixty years, and there is no provision in the statute for a sinking fund. The validity of the law must be determined by the character and scope of the powers attempted to be conferred by it, although they may never be actually exercised. How far the constitutional restrictions apply to this case will depend upon the condition of the city debt, including that to be created under the amendatory act when compared with the assessed value of real estate on the assessment roll of the preceding year. The learned court at Special Term went into an examination of the facts and figures upon that question and came to the conclusion that the constitutional restriction contained in article eight had been violated, and we do not think it necessary in this court to examine the facts and figures, or test the calculations upon which his conclusion was based, since we are of opinion that the statute in question is in conflict with another constitutional provision.

Nor is it necessary to answer the questions certified more specifically as we are agreed that upon one ground, at least, the act is in conflict with the Constitution. Whether it violates other provisions or is defective in other respects, it is not necessary to discuss further than we have.

It follows that the order appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, BARTLETT, HAIGHT, VANN and WERNER, JJ., concur.

Order affirmed.