## Court of Appeals.

Feby. 21, 1905.

# THE PEOPLE v. MARTIN EBELT.

(180 N. Y. 470.)

1. MURDER—INSANITY AS DEFENSE—SUFFICIENCY OF EVIDENCE TO WARRANT CONVICTION.

The evidence upon the trial of an indictment for murder in which insanity was interposed as a defense reviewed, and held sufficient to sustain a verdict convicting the defendant of the crime of murder in the first degree.

2. TRIAL—WHEN CHALLENGE TO PANEL OF TRIAL JURORS ON GROUND OF UNCONSTITUTIONALITY OF SPECIAL JURY ACT INSUFFICIENT.

A written challenge interposed to a panel of trial jurors upon the ground that the act under which they were drawn (L. 1892, ch. 491; amd. L. 1893, ch. 269) was unconstitutional (Const. art. 3, § 18), which fails to allege (§ 23) that the act was not reported to the Legislature by the commissioners of statutory revision, and which was duly excepted to by the prosecution, is insufficient to warrant the conclusion that the act was invalid, and is properly overruled.

3. WHEN DEFENDANT ON TRIAL FOR MURDER NOT PREJUDICED BY DRAWING AND RETURN OF TRIAL JURORS UNDER UNCONSTITUTIONAL ACT.

Assuming, however, the invalidity of the act where, in accordance therewith, the jurors were taken from the body of the county and possessed the same qualifications in substance as those provided for by the Code of Civil Procedure, and each was separately examined by each side, and each side expressed satisfaction with each juror before he was sworn to try the case, it is not apparent how the defendant could have been prejudiced in respect to the drawing and return of the jurors and no right guaranteed to him by the Constitution is thereby invaded.

APPEAL from a judgment of the Supreme Court, rendered February 25, 1904, at a Trial Term for the county of Westchester, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

Sydney A. Syme and George C. Andrews for appellant. The challenge raising the constitutionality of the Special Jury Law for Westchester county was properly before the trial court, and is properly before this court, and there was no waiver of said challenge on the part of defendant at the trial. (Code Crim. Pro. §§ 361, 364, 365, 366, 367, 368; People v. Wilber, 39 N. Y. S. R. 743; 15 N. Y. Supp. 436.) The Special Jury Law of Westchester county is unconstitutional and void, and was passed in contravention of the Constitution of the State of New York. (Const. N. Y. art. 3, § 18; L. 1892, ch. 491; L. 1893, ch. 269; Matter of Henneberger, 155 N. Y. 420; People v. Petrea, 92 N. Y. 128.)

J. Addison Young for respondent. The question of defendant's responsibility for his acts was correctly submitted to the jury by the court, and, having been decided as a question of fact by the jury, will not be reviewed by this court. (People v. Egnor, 175 N. Y. 419; People v. Rice, 159 N. Y. 400.) The challenge to the panel of trial jurors was properly denied. (People v. Wilber, 15 N. Y. Supp. 435; People v. Petrea, 92 N. Y. 128; People v. Borgstrom, 178 N. Y. 254; Matter of Potter, 161 N. Y. 89; L. S. Co. v. Colby, 120 N. Y. 640; People v. Dunn, 157 N. Y. 535; People v. Shea, 147 N. Y. 78; People v. Young, 151 N. Y. 210; People v. Sickles, 156 N. Y. 541.) In the method of drawing and return of the petit jury, prescribed by chapter 491 of the Laws of 1892, as amended by chapter 269 of the Laws of 1893, there is no material departure from the forms prescribed by the Code of Civil Procedure. (People v. Dunn, 157 N. Y. 527.)

HAIGHT, J. The defendant was indicted for having feloniously, willfully and maliciously made an assault upon Augusta Ebelt, his wife, and with a deliberate and premeditated design to effect her death did choke, suffocate and strangle her until she died.

Upon the trial it appeared that the defendant was twenty-two years of age; that he lived in Mount Vernon, Westchester county, at the home of his father and mother on Franklin avenue with his wife, to whom he was married on the 9th day of February, 1902; that they had had trouble and that on two occasions when she had been ill she had returned to her mother's home and had remained two or three months at a time; that he had been requested to support her and had refused, and that he had been arrested and taken before a magistrate to compel him to render proper support. It further appeared that the decedent was killed on Friday night, July 24th, 1903, and that her body was secreted in an old sewer, which had become broken and out of use, and that her body was discovered on Sunday afternoon thereafter. On the following Monday the defendant was found at work at White Plains driving a team for a telephone company and was notified of his wife's death and asked to come and identify her. This he did, in company with the coroner and a police officer, and having identified the body he was detained in custody. Subsequently he sent for the coroner, and upon his arrival told him that he wished to make a statement to him. He was then informed that his statement would be voluntary and that it could be used against him. It was then made in the presence of the police commissioner, a stenographer taking it down, and after it was taken it was read over to him and he signed it. The coroner's recollection of it is as follows: " He said he came home Friday night and told his wife that he had a position for her over on Wolf's lane and wanted to know if she would take it and that she said yes; that after supper she got her hat and they started out for Wolf's lane. When they came to the place where the sewer was on Garden avenue, they went down there and sat down and he accused her of having connection with a man that worked for some ice concern at City Island. She denied it, . . . and he told her that she lied, and I think he said that they were sitting on the fence at the time and from there they sat down on the bank; that he turned

around and grabbed her by the throat and choked her into insensibility—choked her until she could not speak or move. After that he took a shoe-string and put it around her neck and knotted it as best he could, picked her up and carried her, head downward, to the sewer and threw her in. I asked him where he got the shoe-string, and he said out of the bureau drawer, Friday morning. He said about two weeks previous he had gone over to the sewer, and that he thought it was a good place to put her out of the way; that he had become disgusted with his wife and looked around for a place to put her out of the way. He said that was a good place."

The defense interposed was that of insanity, and evidence was given tending to show that, at the time of his birth, he received injuries to his head; that he was greatly troubled with headaches and had had scarlet fever and malaria; that he was a great smoker of cigarettes; that they had a deleterious effect upon his mental capacity, and a physician, in answer to a hypothetical question based upon the testimony given in support of his defense stated that he considered him to be a moral degenerate suffering from moral insanity; that he did not possess sufficient intelligence to know right from wrong. On the other hand, it was shown from those for whom he had worked that he knew his business and worked well, and was an ordinarily intelligent man; that he was accomplished as an accordion player, and his mother, on cross-examination, admitted that he had gone to school regularly and had learned readily, and was a smart boy in school and that he had worked steadily and had made money. Doctors Samuel B. Lyon and Carlos F. McDonald were sworn as experts, both of whom, after a personal examination of the defendant, on August first and third, 1903, gave it as their opinion that he was sane. The evidence was of that character as to make it a proper question for the jury to dispose of, and we are of the opinion that the evidence given fully sustained the verdict rendered.

The appellant presents but one question which he calls upon us to review, and that has reference to the challenge interposed to the panel of trial jurors. The challenge is in writing and is made upon the ground "of a material departure to the prejudice of the defendant from the forms prescribed by the Code of Civil Procedure in respect to the drawing and return of the jury, and specifies the following facts as constituting the ground of challenge, to wit: That said jurors were not selected, drawn and served in the manner and form provided for by sections 1035, 1036, 1037, 1038, 1039, 1042, 1043, 1044, 1045, 1046, 1047 and 1048 of the Code of Civil Procedure. Said jury having been selected, drawn and served under and pursuant to the provisions of chapter 491 of the Laws of 1892, as amended by chapter 269 of the Laws of 1893, which chapter 491 of the Laws of 1892 and said amendment thereof is claimed by the defendant to be unconstitutional and void and passed in contravention of article three, section eighteen of the Constitution of the State of New York." Then follows an offer to prove certain facts, which constitutes no part of the challenge authorized by the Code. To the challenge made the district attorney interposed an exception and thereupon the court overruled the challenge. The jurors were then drawn from the box in the usual way, were examined by the defendant's counsel and those that proved satisfactory were duly sworn as the jurors to try the case. Under the practice prescribed by the Code of Criminal Procedure, a challenge to the panel of jurors is required to be in writing, distinctly specifying the facts constituting the ground of challenge. It must be founded on a material departure to the prejudice of the defendant from the forms prescribed by the Code of Civil Procedure in respect to the drawing and return of the jury, or of the intentional omission of the sheriff to summon one or more of the jurors drawn. If the sufficiency of the facts alleged as a ground of challenge be denied the adverse party may except to the challenge which

must be entered upon the minutes of the court, and thereupon the court, assuming the facts as alleged to be true, must determine the sufficiency of the challenge. If the challenge is deemed sufficient the court, if justice require it, may permit the party excepting to withdraw his exception and to deny the facts alleged in the challenge. If the exception be allowed the court may, in like manner, permit an amendment of the challenge. If the challenge be denied the court must proceed to try the question of fact raised with reference thereto and determine whether the challenge should be allowed or disallowed. (§§ 362 to 368.) It will, thus, appear that an exception interposed by the district attorney raised the question as to whether the facts alleged as constituting the ground of challenge were sufficient to establish the unconstitutionality of the acts of the legislature under which it is alleged that the jurors were drawn and served. Article three, section eighteen, of the Constitution provides that the Legislature shall not pass a private or local bill for the selecting, drawing, summoning or impaneling of grand or petit jurors; but this provision, under section twenty-three of the same article, does not apply to any bill, or the amendment of any bill which shall be reported to the Legislature by commissioners who have been appointed pursuant to law to revise the statutes. A commission to revise the statutes was authorized by chapter 289 of the Laws of 1889. By chapter 15 of the Laws of 1892 an appropriation was made for the continuance of the commission so authorized, and in 1893, by chapter 24, section twenty-three was added to the legislative law, making it the duty of the commissioners of statutory revision "on request of either house of the Legislature or of any committee, member or officer thereof to draft or revise bills, to render opinions as to the constitutionality, consistency or other legal effect of proposed legislation and to report by bill such measures as they deem expedient." This act was approved on the 6th day of February, 1893, and took effect immediately.

It was, therefore, in full force and effect when chapter 269 of the Laws of 1893, under which the jury in question were alleged to have been drawn, was passed and became a law. The question, therefore, as to whether this act is violative of article three, section eighteen, of the Constitution, depends upon the fact as to whether the bill was reported to the Legislature by the commissioners appointed by law to revise the statutes. Again referring to the facts alleged in the challenge as constituting the grounds thereof, we find no allegation to the effect that the bill was not so reported by such commissioners of revision. It, therefore, appears to us that the allegations of fact were insufficient to warrant the conclusion of law that the act was in contravention of article three, section eighteen of the Constitution.

While we might properly rest our decision on the question considered with reference to the sufficiency of the facts alleged in the challenge, we have concluded, in view of the great public importance of the questions arising with reference to the validity of juries impaneled for the purpose of trying questions of fact in both civil and criminal cases involving the lives, liberties and properties of our people, to determine the question of the validity of the trial, upon the assumption that the act in question was violative of the provisions of the Constitution to which we have referred.

As we have seen, each juror after being drawn was separately examined by each side and each side expressed satisfaction with each juror before he was sworn to try the case. The act in question provided for a commissioner of jurors in the county of Westchester, who was required to select from the names of persons residing in the county suitable persons to serve as jurors. These persons, so selected, were to be taken from the body of the county, possessing the same qualifications in substance as those provided for by the Code of Civil Procedure. It is, therefore, not apparent how the defendant was prejudiced

in respect to the drawing and return of the jurors. He got good, qualified men, selected from the qualified citizens of the entire county and persons with whom he was entirely satisfied after submitting each juror to a personal examination. The jury was drawn and summoned in accordance with the provisions of a statute. Presumably there was no other jury list in existence in this county from which jurors could be drawn. Section eighteen of the Constitution, to which allusion has been made, applies as well to grand jurors as petit jurors. We think, therefore, the same rule applies to trial jurors that exists with reference to grand jurors.

In the case of People v. Petrea (92 N. Y. 128, 143; s. c., 1 N. Y. Crim. 233, 243), ANDREWS, J., in delivering the opinion of the court, says: " We are of opinion that no constitutional right of the defendant was invaded by holding him to answer to the indictment. The grand jury, although not selected in pursuance of a valid law, were selected under color of law and semblance of legal authority. The defendant, in fact, enjoyed all the protection which he would have had if the jurors had been selected and drawn pursuant to the general statutes. Nothing could well be more unsubstantial than the alleged right asserted by the defendant under the circumstances of the case. He was entitled to have an indictment found by a grand jury before being put upon his trial. An indictment was found by a body, drawn, summoned and sworn as a grand jury, before a competent court, and composed of good and lawful men. This, we think, fulfilled the constitutional guaranty. The jury which found the indictment was a *de facto* jury selected and organized under the forms of law." To our minds the remarks of the learned judge apply with equal force to the petit or trial jury that were summoned and sworn in this case. (See, also, People v. Borgstrom, 178 N. Y. 254; s. c., 18 N. Y. Crim. 259.)

The judgment and conviction should be affirmed.

O'BRIEN, J. (dissenting) : I cannot concur in the judgment in this case for reasons which I will state as briefly as possible. However guilty the defendant may be, he cannot be put to death until after he has had a fair trial according to the law of the land. The defendant has been tried and found guilty, but not by a jury that had any legal right or power to convict him. There was no legal power to summon, impanel or swear the jury. The jury had no power to hear or determine the facts of the case, or to render a lawful verdict. It will not do to say that the defendant was convicted by good and fair men, since a vigilance committee, without any law except the law of force, might summon just such men and thus convict and execute a man notoriously guilty. In fact, such things have been done in some of our sister states, but I assume that this court is not prepared to sanction such methods of preventing crime.

There is no dispute about the fact that the jury was summoned, organized and sworn under chapter 491 of the Laws of 1892, as amended by chapter 269 of the Laws of 1893. That statute is entitled "An act in relation to jurors and to the appointment and the duties of a commissioner of jurors in the county of Westchester." Neither the district attorney nor any one else claims or asserts that these statutes are valid laws. It is admitted by every one that they were and are unconstitutional. Article 3, section 18, of the Constitution forbids the passage of any private or local bill for the selecting, drawing, summoning or impaneling of jurors, and clearly this statute was a local bill for that very purpose since is applied only to Westchester county. An unconstitutional law is no law. Such a law is simply void. It confers no rights, imposes no duties, confers no protection, creates no office, and is an inoperative for any purpose as if it had never been passed. (Matter of Brenner, 170 N. Y. 185, 194; Norton v. Shelby Co., 118 U. S. 425.) So that the jurors who tried the defendant were

not obliged to appear or to be sworn or to serve. Whatever they did was their mere voluntary act and not in pursuance of or in obedience to any law. The judgment in this case, involving, as it does, the life of a human being, is made to hang on the form of a challenge to the panel of jurors interposed by the defendant. It is said that the challenge was not broad enough or specific enough and that, therefore, it was properly overruled at the trial.

The challenge is a method of presenting for the decision of the court some question of law or fact concerning the qualifications of a juror or the validity or legal organization of the panel. In this case the challenge was in writing signed by the defendant's counsel and covers two pages of the record. It stated, among other things, (1) that the jurors were not selected or drawn under any of the provisions of the Code; (2) that they were selected and drawn under the special law above referred to; (3) that the defendant claimed that such special law was unconstitutional, and (4) that it contravened article 3, section 18, of the Constitution. Then follow some other statements in the same paper in the form of offers of proof: (1) To show that the jurors were actually drawn and summoned under the special law for Westchester county; (2) to show that the special statutes already referred to were not reported to the legislature by any commission appointed by law to revise the statutes. The district attorney demurred to the challenge, and the court sustained the demurrer and overruled the challenge, and the defendant's counsel excepted. The very technical and untenable ground upon which the challenge was overruled appears from the fact that no one claims or ever did claim that the statutes in question were ever reported to the legislature by any commission. If they ever were that fact is matter of record, and such a record, if it existed, would be admissible in this court to support the judgment.

The only defect in the form of the challenge is said to be that it did not, in the challenging part of the paper, state that the special laws were not reported by the revision commission to the legislature, although there was an offer made to prove that fact in the subsequent part of the same paper. It seems to me that the challenge was sufficient beyond all dispute or controversy. When the district attorney demurred to it, he necessarily admitted the facts stated in it, and, therefore, admitted that the laws which were challenged were unconstitutional. A statement in a challenge that the law is unconstitutional is a statement of a fact, although the fact is provable only by an inspection of the record and by argument, and when it is admitted that the statute is unconstitutional, that necessarily embraces and negatives the fact that the law was reported to the legislature by a commission. Certainly a challenge need not be any broader nor more specific than a pleading intended to raise the same question. Surely a challenge must be good if it states facts sufficient to sustain a pleading intended to present to the court the same question. This court hears arguments and decides cases almost every day where the question concerning the constitutionality of a law is presented by the pleadings only by the mere allegation that such law is unconstitutional. In fact we have just decided a case in favor of a taxpayer who sought to restrain city officers from executing a statute which he claimed to be unconstitutional, and the allegation in the complaint simply was that it was unconstitutional and violated a certain article and section of that instrument. The answer denied the allegation and we held the law unconstitutional. (Cahill v. Hogan, 180 N. Y. 304.) It did not occur to us when deciding that case that it was necessary in a pleading to say anything more in order to raise the question as to the validity of the statute, except to state simply that it was unconstitutional.

The allegation of that fact amounts to the same as a statement that the legislature had no power to pass it, and it would not be good pleading to inject into the complaint or answer the reasons or the arguments upon which the allegation is based.

The defendant stated enough when he stated that the law under which the jury were drawn was a local law, and it is doubtful if it was even necessary to add to that statement that it was an unconstitutional law. But the challenge, I think, was full and complete.

A compliance with the rules of good pleading is sufficient in stating the grounds of a challenge. Indeed, it is more than sufficient, since a challenge may be good which would not be sufficient as a pleading. Hence it is plain that the defendant was not obliged to say anything about or negative the provisions of article 3, section 23, of the Constitution, which provides that the previous sections 17 and 18 shall not apply to any bill or the amendment of any bill which shall be reported to the legislature by the commissioners who shall be appointed by law to revise the statutes. The rules of good pleading applicable to statutes apply with equal force to constitutional provisions. The defendant interposed his challenge at least in the very language of section 18. He was not obliged to negative the things that were provided for in the subsequent sections, since in stating a cause of action arising upon a statute, it is an ancient rule that where an exception is incorporated in the body of the clause of a statute, he who pleads the clause ought to plead the exception. But where there is a clause for the benefit of the pleader, and afterwards follows a proviso which is against him, he may plead the clause and leave it to his adversary to show the proviso. (Jones v. Axen, 1 Ld. Raym. 120; Harris v. White, 81 N. Y. 532; U. S. v. Cook, 17 Wall. 168, Com. v. Hart, 11 Cush. 130; Sheldon v. Clark, 1 Johns. 513; Bennet v. Hurd, 3 Johns. 438; Teel v. Fonda, 4 Johns. 304; Fleming v. People,

27 N. Y. 329; People v. Kibler, 106 id. 321, s. c. 7 N. Y. Crim.
23; People v. Briggs, 114 id. 56; Rowell v. Janvrin, 151 id.
60, 66, 67.) This principle is clearly applicable to the ques-
tion involved in the challenge. The defendant pleaded the
principal clause of section 18, article 3. The subsequent pro-
vision contained in section 23 was a modification of the prin-
cipal clause. It was in the nature of a proviso, and so all that
the defendant had to do was to plead the clause and leave it to
the district attorney to plead the proviso.

But it is said that although the defendant may have been
tried by an unconstitutional jury, yet he was not injured.
This case involves much more than the rights of a person con-
victed of a capital offense. It involves the question as to
how far the courts will shut their eyes and ignore plain viola-
tions of the Constitution. Constitutional safeguards are very
much like fortresses that can seldom be captured by an open
and direct assault. But those provisions may, like the fort-
tress, be undermined by silent and insidious approaches. In
that process precedents always play an important part, and
precedents are made in such cases under the stress of some real
or imaginary necessity. This case is an illustration of all that.
The Petrea Case (92 N.Y. 128, s. c. 1 N.Y. Crim. 233) is cited
as showing that the defendant was lawfully convicted, but that
he was convicted in such a way that he has no cause for com-
plaint. It was held in that case that the defendant was not
injured when indicted by an unconstitutional grand jury, and
that it sought to be made a precedent to uphold a conviction
by an unconstitutional trial jury, apparently forgetting all the
time that there is a vast difference between the two. The
former is merely an accusing body that decides nothing
finally. The latter are the triers of the facts, and their ver-
dict, when supported by evidence, is final and conclusive.
Therefore, I am not prepared to say that because this court
once overlooked objections to the constitutionality of a grand

jury that it ought now to shut its eyes to the violation of the Constitution in the selection of trial jurors. I assume that since the special law here in question has been repealed that Westchester county now has a valid law for summoning and drawing trial jurors, and it seems to me that it would be wise to put that county to the expense of a new trial of this case rather than to hold that the defendant could properly be con-. convicted of a capital offense by a jury drawn without warrant of law.

We are now asked to sanction two principles that are to become precedents in order to save the judgment in this case. The one is that the very narrow and technical reasoning in support of the ruling of the court at the trial, rejecting and overruling the defendant's written challenge to the panel of jurors, is sound law, and the other is involved in the proposition that in a capital case a verdict of conviction by a jury selected under a void law is just as good and effectual for all practical purposes as a verdict of conviction by a jury selected under a valid law. So I am in favor of reversing the judgment.

GRAY, BARTLETT, VANN and WERNER, JJ., concur with HAIGHT, J.; O'BRIEN, J., reads dissenting opinion; CULLEN, Ch. J., absent.

Judgment of conviction affirmed.