Dow Vroman and Abraham Weil, Individually and as Members of and Constituting the "Board of Elections" for Niagara County, New York, Plaintiffs, v. Norman D. Fish, Thomas T. Feeley and Burt A. Duquette, County Judge, County Clerk and District Attorney, respectively, of Niagara County, New York, Defendants.

(Supreme Court, Niagara Equity Term, July, 1917.)

Election Law — amendments of — Niagara county — constitutional law — injunctions — statutes — Laws 1917, chap. 202, art. 7-b.

Chapter 202 of the Laws of 1917, which purports to amend the Election Law by adding a new article, to be article 7-b, which creates the office of commissioner of elections and removes the plaintiffs who now constitute the board of elections for Niagara county and which changes the election machinery in said county in several important particulars, is a local act and violates section 16, article 3, of the State Constitution which declares: "No private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title."

Plaintiffs, the regularly designated officials in charge of elections in Niagara county, are entitled to maintain an action to restrain the appointment of a commissioner of elections under said statute of 1917.

Action for an injunction.

Alfred W. Gray, for plaintiffs.

Bradley, Merritt & Bradley, for defendants Feeley and Duquette.

Pooley, J. This is an action to enjoin the defendants from appointing a commissioner of elections under the provisions of chapter 202, Laws of 1917, which purports to amend the Election Law by adding

a new article, to be article 7-b, which creates the office of commissioner of elections and removes the plaintiffs who now constitute the board of elections, and which changes the election machinery of Niagara county in several important particulars. The plaintiffs urge that the act in question is unconstitutional because it is local legislation. The defendants contend to the contrary, and also that a court of equity has no jurisdiction.

Plaintiffs are members of the " board of elections " for Niagara county, having been appointed as such pursuant to the provisions of chapter 649, Laws of 1911, which amends chapter 22, Laws of 1909, constituting chapter 17 of the Consolidated Laws, and is a general law relating to the elections, and provides for boards of elections in all the counties of the state. The original Consolidated Laws regarding elections incorporated certain provisions applicable to certain counties, for example, article 8 retained the legislation theretofore adopted for Erie county; article 9 for Monroe county; article 10 for Onondaga county; article 11 for Westchester county. This left the matter of elections for the great majority of the counties of the state under the general provisions of the law. The natural supposition is that the specifically named counties were looked after by those most interested in retaining laws peculiar unto themselves although it is not apparent that their laws are or were any more efficacious than the general law. But in 1911 the legislature by chapter 649 repealed the sections relating to the above mentioned counties leaving the provisions for boards of elections applicable to all the counties except those embraced in Greater New York. Since then I find in examining the statutory enactments that the same proceedings are being taken to obtain special laws on the subject for certain counties

and there is no good reason why fifty odd other counties should not formulate election laws applicable to as many several counties if it is the policy of the legislature to enact them. Of course it is within its right provided it conforms to the Constitution.

This statute (Laws of 1917, chap. 202) provides (§ 225) for the creation of the office of commissioner of elections for Niagara county with " all the rights, powers, authority, duties and obligations immediately heretofore by law vested in and imposed upon any officer or officers of the county of Niagara or any political subdivision thereof or therein, excepting the appointment, duties and obligations of inspectors of election, poll clerks and ballot clerks, who shall be appointed as hereinafter provided and serve as provided by law with respect to general or special elections and official primaries in the county of Niagara or in any political subdivision thereof or therein."

Section 226 provides for the appointment, qualifications and removal of the commissioner, and that upon his appointment and qualification the existing board of elections shall be deemed abolished.

Section 227 provides for the appointment and removal of inspectors of election, poll clerks and ballot clerks. The chairman of the county committee of the predominant political parties shall file with the commissioner a list of persons who are duly qualified to serve as inspectors of election, poll clerks and ballot clerks to be accepted or rejected by the judgment of the commissioner, and if, in case of rejection, a new list is not presented, then the commissioner may appoint from the party in default.

Section 229 provides that all books, documents, papers, records and election appliances, including voting machines, shall be transferred to the care, custody and control of the commissioner.

Section 236 provides that the commissioner shall fix the polling places for primaries, registration and election; create, alter or divide the various political divisions of Niagara county into election districts.

It is manifest that the purpose of the act is to change that which is regarded as a proper election system for the other counties of the state to one which for some reason not apparent is peculiarly applicable to Niagara county. There is no hint that the present board of elections has in any way failed to perform the duties prescribed, or that the Election Law has not been or will not be properly administered under the state wide system, or that better results will be obtained with a single commissioner, necessarily from one political party, than with a bipartisan board.

It is manifest that this legislation did not originate from a desire of the people of the state to give Niagara county a law different from all others, but rather originated from the desire of those interested in securing something which the state wide law did not accord them. It seems to me beyond question that the act was local, and was therefore open to the charge that it violates the Constitution, article 3, section 16, which reads: '' No private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title.''

The case of *People ex rel. Corscadden* v. *Howe,* 177 N. Y. 499, is one in many respects like this in its legal application, and holds that the act in question was illegal. It has been cited several times since. *Cahill* v. *Hogan,* 180 N. Y. 309; *Economic Power & Const. Co.* v. *City of Buffalo,* 195 id. 286, 302; *Willis* v. *Rochester,* 219 id. 433.

The fact that the act is amendatory of a general law does not relieve it from the criticism that its purpose is local in its application.

It is not the province of the courts to question the wisdom of the legislature, nor is it proper for us to seek to defeat a statute legally enacted, and it is only in case it clearly appears, that courts will declare an act unconstitutional.

It is, however, not only the right but the duty of the court to pronounce judgment against the validity of a statute in a proper case and it is the right of a citizen, by appropriate legal procedure, to present it.

The second proposition is that a court of equity has no jurisdiction, and the *Corscadden Case, supra,* is cited as authority to sustain it, holding that a court of equity will not entertain jurisdiction over contests to public office. If, therefore, this action is a contest to determine the right to public office it must be dismissed. But it seems to me that the subject-matter is far more serious. There is no one claiming the office in question as against the present incumbents. In the *Corscadden* case in equity, the plaintiff Corscadden brought in not only the appointing power, the Albany penitentiary commission, but the appointee, McCreary, thus making it an action by the incumbent of the office to procure an injunction to restrain the commissioners from removing him and from appointing McCreary to the position. The commissioners had notified plaintiff that on a given date they would remove him and appoint McCreary. The defendants demurred to the complaint, and the issue of law thus raised was tried, the demurrer overruled and judgment awarded to plaintiff, holding that the act in question was violative of the Constitution. The question of title to office was practically the real issue, and in endeavoring to maintain it the plaintiff challenged the authority of the commission to remove him or to appoint a successor.

The present action, however, is to restrain an

illegal act, and the removal of the plaintiffs from office is but one of the incidents involved. The plaintiffs ask to restrain the defendants from making the appointment of a commissioner of elections. This is the only function of the defendants under the act, and, if they perform it, their duties are at an end except to fill a vacancy if one existed. There is no such office as a commissioner of elections of Niagara county if this legislation is illegal.

The train of incidents which would follow an appointment thus made would include (1) the ousting of the present board of elections, (2) the change from a bipartisan board to a partisan head of the election machinery, (3) the control by the one partisan head of the inspectors, poll and ballot clerks, (4) the like control of all the records and appliances used in elections, including voting machines, (5) probably a partisan redistricting of the county.

It is conceivable that if such act is permitted, a proceeding quo warranto would be instituted, or mandamus would be asked, or certiorari proceedings taken, in either case to test the validity of the act; that a taxpayer's action might be instituted for a like purpose; that an action would be brought relative to the custody of the voting machines, etc.

It seems to me, therefore, that this case is clearly distinguishable from the *Corscadden* case, and falls within the class of cases authorized to prevent a multiplicity of suits or circuity of action. 3 Pom. Eq. Juris. § 1345.

If the act is a nullity it should certainly be appropriate to prevent action under it before the alleged damage is done, and when in one action the results will be attained which otherwise might involve several suits at law, to say nothing of the escape from the confusion which would follow upon the

changes contemplated by the act, and the restoration of the now existing system, if either of the methods were adopted to test the legality of the legislation here involved.

I think that it is appropriate that the plaintiffs should take this action. They are the regularly designated officials in charge of the elections in Niagara county; they are charged with the duty of enforcing the Election Law which is unlawfully assailed.

Judgment for plaintiffs, but without costs, because the defendants are not responsible for the conditions which place them in the attitude of defendants here.

Judgment accordingly.